

# NUMBER 13-18-00047-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**MICHAEL JAMES AGUILAR,**                                                        **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                        **Appellee.**

---

**On appeal from the 40th District Court
of Ellis County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Contreras, and Benavides
Memorandum Opinion by Justice Rodriguez**

By seven issues, appellant Michael James Aguilar challenges the revocation of his

community supervision.   We affirm.

**I.     BACKGROUND[1]**

---

[1] This case is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to an order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw

In 2014, Aguilar was charged by indictment with assault on a family member by impeding the normal breathing or circulation of the blood, with a previous family violence offense, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.01(b-2) (West, Westlaw through 2017 1st C.S.). Aguilar pleaded guilty according to a plea agreement, and he was placed on deferred adjudication community supervision for a period of six years.

The State filed a motion to adjudicate guilt, alleging that Aguilar had violated the terms of his community supervision by: committing two new criminal offenses, animal cruelty[2] and failure to identify while a fugitive from justice[3]; consuming an alcoholic beverage; failing to report to his supervision officer from March 2016 through July 2017; failing to work at suitable employment; failing to pay supervision fees; failing to pay court costs and other fees; failing to perform any of his required 180 community service hours; failing to submit to a substance abuse evaluation; and failing to enroll in and complete a Batterer's Intervention and Prevention Program.

The State's motion was heard on December 17, 2017. Viewed in the appropriate light, the evidence at the revocation hearing established the following facts.

## A. Animal Cruelty

Dean Settlemeyer purchased Aguilar's house at a foreclosure sale. When he arrived at the house on June 17, 2015, he found a malnourished dog barely able to move

---

through 2017 1st C.S.). Because this is a transfer case, we apply the precedent of the Tenth Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

[2] TEX. PENAL CODE ANN. § 42.092(b)(3) (West, Westlaw through 2017 1st C.S.).

[3] *Id.* § 38.02(b), (d) (West, Westlaw through 2017 1st C.S.).

in the fenced back yard. Settlemeyer called Aguilar to ask why the dog had not been fed. Aguilar agreed that the dog was his but maintained that a family member was supposed to be caring for the dog. Settlemeyer contacted local police to report the situation. When Settlemeyer came to the property the next morning, the dog was gone.

That day, Melissia Pieper found the dog on the side of the road outside of city limits. Pieper believed he was about to die, so she took him home and gave him water. She and her family nursed the dog back to health over the course of the next month and adopted him as their own.

## B. Failure to Identify

On February 23, 2017, Aguilar was involved in an auto collision while driving a work truck. After the collision, Aguilar paused briefly, but then sped off. Another driver followed Aguilar, took pictures of his license plate, and reported him to police. Aguilar returned the work truck to his office and left early, before noon. Other employees found the truck in the parking lot with front-end damage and leaking fluids. They reported that the interior smelled of alcohol, and the contents of Aguilar's billfold were spread across the floor.

Aguilar returned to the office later that afternoon, prompting his employer to call police. Aguilar identified himself to police by his brother's name, "Tommy Aguilar." Officers explained to him that he was considered a fugitive because of his conduct earlier in the day, and that he would be committing an offense if he gave a false name. Aguilar continued to insist that he was Tommy Aguilar. He was arrested, and fingerprinting confirmed that he was in fact appellant Michael Aguilar.

## C. Other Violations

3

Aguilar's probation officer explained that he had violated the conditions of his community supervision in multiple ways. The conditions required him to report to the community supervision monthly, but Aguilar did not report from February of 2016 through February of 2017. Aguilar was delinquent over $1800 in costs and fees. The conditions required him to enroll in a Batterer's Intervention Prevention Program, but he never did so. The probation officer also testified that there was no documentation showing that Aguilar had completed other requirements, including the requirement to perform community service hours.

## D. Mitigation

Aguilar's older brother Tommy testified that Aguilar was a decent man and a devoted father who had worked hard in life. Tommy explained that he and his brother had grown up in a household full of drinking and violence, and he believed that this environment was partly to blame for Aguilar's family violence offense.

## E. Ruling

After a hearing, the trial court found all the allegations true, adjudicated Aguilar's guilt, sentenced him to fifteen years in prison, and assessed a $2,000 fine.

## II. MICHAEL MORTON ACT

In his first issue, Aguilar contends that the trial court erred by admitting photographs of his malnourished dog, the damaged work truck, and other inculpatory subjects. He complains that these photographs were never produced to him prior to trial, which violated amended article 39.14 of the code of criminal procedure, also known as the Michael Morton Act. *See generally* TEX. CODE CRIM. PROC. ANN. art. 39.14 (West, Westlaw through 2017 1st C.S.). We review the trial court's decision to admit evidence

4

under an abuse of discretion standard. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018); *see Watkins v. State*, 554 S.W.3d 819, 822 (Tex. App.—Waco 2018, pet. filed) (applying this standard to Michael Morton Act objections concerning admissibility).

However, Aguilar effectively concedes that he never filed a formal request for materials under article 39.14. In order to fully trigger the requirements of article 39.14, a timely request must be made by the defendant to the State.[4] *Hinojosa v. State*, 554 S.W.3d 795, 797 (Tex. App.—Waco 2018, no pet.); *Davy v. State*, 525 S.W.3d 745, 750 (Tex. App.—Amarillo 2017, pet. ref'd); *Glover v. State*, 496 S.W.3d 812, 815 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Absent such a request, the State's affirmative duty to disclose evidence extends only to exculpatory, impeachment, or mitigating information. *Hinojosa*, 554 S.W.3d at 797; *see* TEX. CODE CRIM. PROC. ANN. art. 39.14(h). Because Aguilar never made a formal request, the State's duty to disclose extended only to exculpatory, impeachment, or mitigating information. *See Hinojosa*, 554 S.W.3d at 797. But Aguilar complains only of the failure to disclose *inculpatory* evidence: the photographs which documented his community supervision violations. Because this evidence was not exculpatory or in any sense favorable to Aguilar, the State had no duty to produce it absent a proper request. *See Glover*, 496 S.W.3d at 815. Accordingly, the trial court did not abuse its discretion by admitting this evidence. *See Watkins*, 554 S.W.3d at 822.

We overrule Aguilar's first issue.

---

[4] For purposes of this transfer case, we will assume without deciding that article 39.14 applies in revocation proceedings. *See Freeman v. State*, 554 S.W.3d 816, 818 n.3 (Tex. App.—Waco 2018, no pet.) (expressing no opinion as to whether article 39.14 applies in revocation proceedings).

### III. SUFFICIENCY OF THE EVIDENCE

By his second through seventh issues, Aguilar contends that the State did not adduce sufficient evidence to support any of its grounds for revocation.

#### A. Standard of Review and Applicable Law

We review revocation of community supervision for abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013). To revoke a defendant's probation, the State need only prove a violation of a condition of the probation by a preponderance of the evidence. *Id.* at 864–65. In the probation-revocation context, a preponderance of the evidence means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation." *Id.* at 865. A single proven violation is all that is needed to affirm a trial court's order revoking a defendant's community supervision. *Smith v. State*, 286 S.W.3d 333, 342 (Tex. Crim. App. 2009).

When reviewing an order revoking community supervision, we view all the evidence in the light most favorable to the trial court's ruling. *Hacker*, 389 S.W.3d at 865. The trial court as fact-finder is the sole judge of the credibility of witnesses and the weight to be given to their testimony. *Id.*

#### B. Discussion

Aguilar was placed on community supervision for family violence in 2014. The conditions of Aguilar's community supervision required him to report to the Ellis County Community Supervision Department at least once each calendar month. In its motion to revoke, the State alleged that Aguilar violated this condition.

6

Aguilar's probation officer Teresa Ansell testified that Aguilar reported as required for many months, but his last report was in February of 2016. Ansell explained that during that visit, another probation officer confronted him about his failure to comply with certain other conditions, and Aguilar agreed to make changes to comply. However, Aguilar did not report the following month or at any time thereafter. Ansell testified that over the next three months, the probation department made efforts to contact Aguilar, including calls and visits to his home, "all in attempts to get him back in to report," but they were unsuccessful. Ansell testified that the probation department's next contact with Aguilar was in February of 2017, when he was arrested and jailed on another offense.

Viewing this evidence in the light most favorable to the trial court's ruling, we conclude that the State carried its burden to demonstrate by a preponderance of the evidence that Aguilar did not report each month as required. *See id.* This single proven violation justified the trial court's exercise of discretion in revoking Aguilar's community supervision. *See id.*; *Smith*, 286 S.W.3d at 342.

We overrule Aguilar's second through seventh issues.

## IV.    CONCLUSION

We affirm the judgment of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 29th
day of November, 2018.

7